UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED

2013 JUL 17 PM 5: 25

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | CRIMINAL NO. |
| | § | |
| Plaintiff, | § | **SA13CR0588** |
| | § | INDICTMENT |
| | § | |
| | § | [VIO: 18 USC 371, Conspiracy; |
| | § | 18 USC 201(b), Bribery; |
| V. | § | 18 USC 287, False claims against the U.S.; |
| | § | 18 USC 208(a) & 216(a)(2), Participating in |
| | § | a government matter affecting |
| | § | personal interest; |
| | § | 18 USC 1001(a)(3), False statements to |
| HEIDI LYNN WEBSTER (1), | § | U.S. Army; |
| LAWRENCE PETER FENTI (2) and, | § | 18 USC 1343, Wire Fraud; |
| JOHN WALTER HOFFMAN (3) | § | 18 USC 912, Impersonation of Army Officer; |
| | § | 18 USC 1956(a)(1)(B)(i), Money laundering; |
| Defendants. | § | 18 USC 981(a)(1)(A), Demand for forfeiture] |

THE GRAND JURY CHARGES:

At times relevant:

<u>COUNT ONE</u>
[18 U.S.C. § 371]

1. The <u>Department of the Army</u> (Army) was a department of the Department of Defense in the executive branch of the United States government.

2. <u>Fort Sam Houston</u> was an Army post at San Antonio, Texas, that served as headquarters to Army North, the Army Medical Department, and the Army Medical Command.

3. <u>United States Army North</u> (Army North) provided command and control of homeland defense activities and provided support to U.S. civil authorities involved in homeland security matters.

4.  R. P. was a civilian employee of the Army who served as a division chief of Army North's Civil Support Training Activity.   R. P. organized training of National Guard units on how to respond to incidents involving weapons of mass destruction.   By virtue of his position of trust, R. P. was a fiduciary of the United States and the Army and was obligated to be honest and loyal, to disclose all facts that his employer was entitled to know, and to safeguard information, property, and money of the United States.

5.  Brooke Army Medical Center (BAMC) at Fort Sam Houston was the Army's largest research, teaching, and trauma hospital.   Its radiology department (BAMC radiology), consisting of more than 200 personnel, utilized imaging technologies, including magnetic resonance imaging (MRI).   BAMC and other Army medical installations also utilized teleradiology, the transmission of radiological images electronically from one location to another for interpretation and consultation.   The Army contracted with private physicians to provide teleradiology services.   During 2007-08, in accordance with the Department of Defense Base Realignment and Closing process, BAMC underwent expansion and improvement of its physical plant causing displacement of MRI equipment. The Army authorized expenditures for temporary MRI facilities and teleradiology.

6.  Darnall Army Medical Center (Darnall) was a hospital providing health care to service members assigned to Fort Hood, Texas, and their families.   The Darnall radiology department utilized scanning technology including computerized tomography, also known as CT scan, an X-ray procedure that combines many X-ray images with the aid of a computer to generate cross-sectional views and three-dimensional images.

7.  Womack Army Medical Center (Womack) was a hospital providing health care to service members assigned to Fort Bragg, North Carolina, and their families.   The

Womack radiology department utilized MRI technology.

8. <u>Defendant Lawrence Peter Fenti</u> was a non-commissioned Army officer trained as a radiology technician. Defendant Fenti worked in the radiology departments of various Army medical facilities, including Irwin Army Medical Center (Irwin) at Fort Riley, Kansas, and BAMC. From 2006 until February 2008, Defendant Fenti was the chief non-commissioned officer of BAMC radiology where he supervised enlisted military personnel and certain civilian employees and facilitated procurement activity. In or about February 2008, Defendant Fenti was selected by the chief of BAMC radiology as the non-commissioned officer in charge of Base Realignment and Closure issues for BAMC radiology, including the procurement of temporary MRI facilities. By virtue of his positions of trust, Defendant Fenti was a fiduciary of the United States and the Army and was obligated to be honest and loyal, to disclose all facts that his employer was entitled to know, and to safeguard information, property, and money of the United States.

9. <u>S. C.</u> was a civilian Army employee who worked in the BAMC radiology department as a radiology technician. During 2008 and 2009, S. C. worked as an administrator. By virtue of her position of trust, S. C. was a fiduciary of the United States and the Army and was obligated to be honest and loyal, to disclose all facts that her employer was entitled to know, and to safeguard information, property, and money of the United States.

10. United States law prohibited government employees from using public office for private gain and provided that government employees could not use or permit the use of a position or title or any authority associated with public office in a manner intended to coerce or induce another person to provide any benefit, financial or otherwise, to the

employee or his friends or relatives, or persons with whom the employee was affiliated in a non-governmental capacity. Government employees were prohibited from accepting gifts from: (a) a prohibited source; (b) given because of the employee's official position; (c) in return for being influenced in the performance of an official act; or (d) from the same or different sources on a basis so frequent that a reasonable person would be led to believe the employee was using public office for private gain; (e) or in violation of any statute.

United States law, 18 U.S.C. § 201(b)(2), prohibited government employees from accepting things of value for being influenced in official acts and duties.

United States law, 18 U.S.C. § 201(c)(1)(B), prohibited government employees from accepting things of value for or because of official acts performed or to be performed by the employee.

United States law, 18 U.S.C. § 208(a), prohibited a government employee from substantially participating in a government transaction in which the employee had a financial interest.

11. <u>Defendant Heidi Lynn Webster</u>, whose maiden name was Heidi Lynn Werner, was a medical doctor residing in Manhattan, Kansas. From 1995 until 2006, Defendant Webster was an Army officer physician who specialized in radiology at BAMC and Irwin where she formed a friendship with Defendant Fenti. On July 24, 2006, Defendant Webster was discharged from the Army at Irwin at the rank of major in order to contract with the Army to provide radiology services at Irwin. Defendant Webster was aware that Defendant Fenti was the chief non-commissioned officer of BAMC radiology and later the non-commissioned officer in charge of base realignment and closure for BAMC radiology and was aware that R. P. and S. C. were Army employees.

12. <u>MRI Resources Inc</u> (MRI Resources) was a Kansas corporation formed by Defendant Webster on May 8, 2007 through which she conducted business activity. On May 15, 2007, Defendant Webster registered MRI Resources in the Department of Defense Central Contractor Registration database.

13. <u>Pro Veteran Staffing Inc</u> (Pro Veteran Staffing) was a Kansas corporation formed by Defendant Webster on June 8, 2008 through which she conducted business. On June 8, 2008, Defendant Webster, using her maiden name Lynn Werner, registered Pro Veteran Staffing in the Department of Defense Central Contractor Registration database.

14. <u>Data Dynamics Incorporated</u> (Data Dynamics) was a Grafton, North Dakota, company engaged in the business of transcribing medical records. It was certified by the Small Business Administration (SBA) as owned by a socially and economically disadvantaged person and was eligible under SBA's 8(a) program to obtain certain federal contracts without competition and certain federal contracts with limited competition.

15. <u>MJS Consulting LLC</u> (MJS Consulting) was a Texas limited liability entity formed by Defendant Fenti on September 9, 2008, using his mother's former name, Mary Slater, and former initials MJS, listing his mother as the governing person, and designating a San Antonio post office box as the address. A MJS bank account was opened at Wells Fargo Bank with only Fenti's mother having signature authority.

16. <u>Defendant John Walter Hoffman</u> was an owner/operator of various businesses, including Hoffman Surgical Devices, Inc. Defendant Hoffman and Defendant Fenti were friends.

17. The <u>Army North orders</u> were orders placed by Army North to an Army prime

contractor to provide personnel for National Guard training exercises. From December 2007 until 2009, MRI Resources acted as a subcontractor on the Army North orders and received payments of $161,382.

18. The $2 million BAMC MRI contract. On April 1, 2008, BAMC radiology requested that Army contracting officials contract with Data Dynamics to provide one MRI scanner system in a modular building for one year. On June 27, 2008, Data Dynamics was awarded Contract No. W81K00-08-P-0582, a $1,544,880 contract to provide one mobile MRI 1.5T System, Siemens brand name or equal, in a 14' x 60' modular building for twelve months, with $30,000 in installation charges, $30,000 in de-installation charges, $30,000 in maintenance, a $24,000 cardiac package, and $15,600 in travel. Monthly payments were $117,940. The Army paid Data Dynamics $1,536,428.44 on this contract.

On June 24, 2009, Data Dynamics was awarded contract W81K00-09-P-0541 which extended the terms of the original $1.54 million MRI contract from June 27, 2009 until September 30, 2009 at an increased monthly charge of $125,050. The Army paid Data Dynamics $516,873 on this contract.

Contract No. W81K00-08-P-0582 ($1,536,428.44) and Contract No. W81K00-09-P-0541 ($516,873), for which the Army paid a total of $2,053,301.44, are hereinafter collectively referred to as the $2 million BAMC MRI contract.

19. The $4.9 million BAMC MRI contract. On April 14, 2008, BAMC radiology requested that Army contracting officials contract with Data Dynamics to provide three MRI scanner systems, a modular building, two technologists, and a medical clerk. On July 16, 2008, Data Dynamics was awarded Contract No. W81K00-08-P-0611, a

$3,687,948 contract to provide three MRI scanner systems, Siemens brand or equal, one modular ancillary building, two MRI technologists, and one MRI medical clerk for twelve months beginning August 1, 2008 through July 30, 2009. Monthly payments were $307,329. The Army paid Data Dynamics $3,687,948 on this contract.

Contract W81K00-09-P-0706 extended for two months (July 31, 2009 through September 30, 2009) the service Data Dynamics had provided under the $3.68 million MRI contract, plus two options of two months. For the first option period, October 1, 2009 through November 30, 2009, Data Dynamics was paid $614,658. The second option period was not exercised. The Army paid Data Dynamics a total of $1,238,535.87 for the extended service.

Contract No. W81K00-08-P-0611 ($3,687,948) and Contract No. W81K00-09-P-0706 ($1,238,535.87), for which the Army paid a total of $4,926,483.87, are hereinafter collectively referred to as the $4.9 million BAMC MRI contract.

20. The staffing contract. On June 13, 2008, BAMC radiology requested that Army contracting officials contract with Pro Veteran Staffing for the services of an orthopaedic radiology technician for one year. On September 15, 2008, Contract No. W81K00-08-P-1044, a $5,576 contract, was awarded to Data Dynamics to provide one MRI technician from the date of award until September 30, 2008. The contract provided four one year renewal options all of which were exercised: October 1, 2008 until September 30, 2009, $78,720; October 1, 2009 to September 30, 2010, $84,230.40; October 1, 2010 to September 30, 2011, $90,124.80; October 1, 2011 to September 30, 2012, $96,441.60. The contract was modified on June 23, 2009 to provide for an additional weekend MRI technician from June 1, 2009 until September 30, 2012. The Army paid Data Dynamics

$633,406.69 on the staffing contract.

21. The Darnall CT scanner. Beginning in September 2008 and continuing in 2009, the Darnall radiology department requested Army authorization to lease a CT scanner system from Data Dynamics. The Army declined to grant authorization.

22. The first teleradiology solicitation. On September 21, 2008, BAMC radiology requested that Army contracting officials contract with MRI Resources for off-site radiological interpretations via teleradiology for one year. BAMC radiology estimated the total contract amount to be $1,989,500. On February 2, 2009, in Solicitation No. W81K00-09-R-0007, Army contracting officials solicited proposals to provide the service from March 1, 2009 until September 30, 2009 plus four one year option periods. MRI Resources submitted a proposal. BAMC radiology withdrew the solicitation prior to award.

23. The second teleradiology solicitation. On May 6, 2009, in Solicitation No. W81K04-09-0002, the Army solicited proposals for a one year blanket purchase agreement for offsite radiological interpretations via teleradiology from October 1, 2009 until September 30, 2010 plus four one year option periods. MRI Resources submitted a proposal in response to the solicitation, but was unsuccessful.

24. The Womack MRI contract. On July 15, 2009 the Womack radiology department requested that Army contracting officials contract with Data Dynamics for the lease of one MRI system for three months plus an option for three additional months. On September 9, 2009, Contract W91YTZ-09-P-1020 was awarded to Data Dynamics to provide one mobile MRI system in a medical trailer at Womack during October, November, and December 2009. The contract included two options. The first option, for

the months of January, February, and March 2010, was exercised and the Army paid Data Dynamics $168,300. The second option, for April and May 2010, was not exercised. The Army paid Data Dynamics $336,600 on the Womack contract.

<u>The conspiracy and scheme</u>

25. Beginning in or about September 2007, and continuing until on or about a date unknown to the grand jury, in the Western District of Texas, and elsewhere, Defendants,

HEIDI LYNN WEBSTER,
LAWRENCE PETER FENTI,
JOHN WALTER HOFFMAN,

and others, willfully conspired:

a. To defraud the United States by corrupting and hindering lawful functions of the Army and depriving the United States of its right to have the business and affairs of the Army conducted honestly and free from fraud, corruption, and conflict of interest and to have the loyal, faithful, disinterested, and unbiased services, decisions, actions, and performance of its soldiers, employees, contractors, and sub-contractors, free from corruption, conflict of interest, fraud, and dishonesty;

b. To cause Army employees to willfully participate in Army transactions in which they had personal financial interests in violation of Title 18, United States Code, Sections 208(a) and 216(a)(2);

c. To commit bribery in violation of Title 18, United States Code, Section 201(b);

d. To commit wire fraud against the United States and the Army in violation of Title 18, United States Code, Section 1343;

e. To make and present false claims against the United States in violation

of Title 18, United States Code, Section 287;

    f.   To make and use false statements, use false documents, and conceal material facts in Army contracting matters in violation of Title 18, United States Code, Section 1001; and

    g.   To launder proceeds derived from the aforesaid violations of law in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

Manner and means

26.   The conspiratorial plan and the scheme were:

    a.   For Defendants Fenti and Webster to form a corrupt partnership in which Fenti, in return for a share of the profits to be obtained, would use his Army positions of trust to steer Army contracts and subcontracts to Webster and her companies;

    b.   To use Defendant Fenti's Army positions of trust to convert and steal information, property, and money of the United States;

    c.   To corrupt Army personnel and contracting processes through graft, lies, half truths, and the concealment of material facts;

    d.   To fraudulently disclose and collude in the use of confidential Army information for personal profit;

    e.   To manufacture false and fraudulent invoices, letters of recommendation, past performance questionnaires, and other documents and present them to Army officials;

    f.   To cause employees of the United States and the Army to violate their fiduciary duties of loyalty, honesty, and disclosure;

    g.   To present false invoices to the United States and steal Army money,

contracts, subcontracts, and information;

h. To disguise bribes paid by Defendant Webster to Defendant Fenti as legitimate payments to a consulting firm, MJS Consulting; and

i. To launder proceeds of the crimes in order to disguise their nature, location, source, ownership, and control.

<u>The Army North orders</u>

27. It was a part of the conspiracy and scheme that beginning in or about August 2007 and continuing until in or about 2009, Defendants Fenti and Webster would bribe R. P. by promising and paying a percentage of the profits for his assistance in causing Army North's Civil Support Training Activity to utilize Webster's MRI Resources as a subcontractor in National Guard unit training.

28. It was a part of conspiracy and scheme that R. P. would urge Army North to cause its prime contractor to order services from MRI Resources.

29. It was a part of the conspiracy and scheme that Army North, at the urging of R. P., would cause its prime contractor to utilize MRI Resources as a subcontractor, that the prime contractor would pay MRI Resources approximately $161,382, and that Defendants Fenti and Webster would pay bribes to R. P. by dividing profits from the task orders with him.

30. It was a part of the conspiracy and scheme to steal from the Army by inflating MRI Resources invoices to the prime contractor, by causing the prime contractor to overcharge the Army, and by causing the prime contractor to pay MRI Resources money that had not been earned.

## The BAMC MRI contracts and staffing contract

31. It was a part of the conspiracy and scheme that beginning in or about March 2008 Defendants Fenti and Webster would fix the $2 million BAMC MRI contract, the $4.9 million BAMC MRI contract, and the staffing contract and thereby enrich themselves by the following means:

    a.   Defendant Fenti would provide confidential Army information relating to BAMC radiology's MRI requirements to Defendant Webster;

    b.   Defendants Fenti and Webster would collude in writing official documents required by Army contracting officials, including the Performance Work Statement and a cost estimate;

    c.   Defendants Fenti and Webster would recruit Data Dynamics, an SBA 8(a) contractor with no previous experience or involvement in the MRI business, to apply for the MRI contracts and the staffing contract;

    d.   Defendants Fenti and Webster would agree to steer the contracts to Data Dynamics with the understanding that Data Dynamics would subcontract to Defendant Webster's MRI Resources;

    e.   Defendant Webster would use confidential Army contracting information to negotiate a lucrative agreement with Data Dynamics;

    f.   Defendant Fenti would use his Army positions of trust to convince Army contracting officials to award the contracts to Data Dynamics;

    g.   Defendant Webster would lie to Army contracting officials and create fraudulent documents indicating Data Dynamics was experienced in the MRI business; and

h. Defendants Fenti and Webster would bribe an employee of BAMC radiology, S. C., by paying her cash for approving contract payments for services not performed and promising more cash to expand the staffing contract.

32. It was a part of the conspiracy and scheme that the $2 million MRI contract, the $4.9 million MRI contract, and the staffing contract would be awarded to Data Dynamics, that the government would pay Data Dynamics in monthly installments, and that Data Dynamics would pay Defendant Webster's MRI Resources a large percentage of the contract proceeds.

33. It was a part of the conspiracy and scheme that Defendants Webster and Fenti would split the profits derived by MRI Resources.

### The Darnall CT scanner

34. It was a part of the conspiracy and scheme that beginning in or about September 2008 and continuing until in or about 2009, Defendants Fenti and Webster would use Defendant Fenti's Army positions of trust to urge Darnall radiation to lease a CT Scanner from Data Dynamics. Defendants Webster and Fenti planned to have MRI Resources act as the subcontractor to Data Dynamics and to share MRI Resources' profits.

### The teleradiology solicitations

35. It was a part of the conspiracy and scheme that beginning in or about August 2008 and continuing until in or about May 2009, Defendants Webster and Fenti would attempt to obtain two Army teleradiology contracts for MRI Resources by the following fraudulent means and others:

a. Defendant Fenti would provide confidential Army data to Defendant Webster prior to the Army's release of the information to competing contractors;

b.  S. C., at the direction of Defendant Fenti, would create a purchase request to Army contracting officials to award the first teleradiology contract to MRI Resources without competition;

c.  When contracting officials determined that the first teleradiology contract would be determined by competitive bids, Defendant Fenti and S. C. would arrange to be appointed to the board evaluating the bids, would falsely certify to having no conflict of interest, and would fraudulently urge the board's other member to select the MRI Resources bid;

d.  Defendants Fenti and Webster would solicit Defendant Hoffman to lie to Army contracting officials in past performance questionnaires and would provide him false documents for submission to the Army; and

e.  Defendant Hoffman would lie to the Army by falsely claiming MRI Resources provided teleradiology services to surgical clinics owned by Hoffman's company.

## The Womack MRI contract

36.  It was a part of the conspiracy and scheme that in or about June 2009, Defendants Fenti and Webster would use Fenti's Army positions of trust to recommend Data Dynamics for a non-competitive award of the Womack MRI contract.

37.  It was a part of the conspiracy and scheme to have MRI Resources act as the subcontractor to Data Dynamics and for Defendants Webster and Fenti to share MRI Resources' profits.

## Overt acts

38.  In furtherance of the conspiracy and to effect the objects and purposes thereof, the Defendants committed the following overt acts and others in the Western District of

Texas and elsewhere:

    a. On or about August 31, 2007, R. P., Defendant Fenti, and Defendant Webster exchanged emails regarding the Army Civil Support Training Activity;

    b. On or about October 19, 2007, Defendant Webster submitted a $9,941.60 MRI Resources invoice to an Army North prime contractor;

    c. On or about March 9, 2008, Defendant Fenti emailed Defendant Webster an Army performance work statement relating to MRIs for BAMC;

    d. On or about July 7, 2008, Defendant Webster traveled from Kansas to Fort Sam Houston, Texas, introduced herself as Lynn Werner, and met with Army officials including Defendant Fenti;

    e. On or about August 13, 2008, Defendant Fenti instructed S. C. to authorize a $231,940 Army payment to Data Dynamics;

    f. On or about October 6, 2008, Defendant Webster directed Farmers State Bank in Kansas to wire $30,000 to MJS Consulting at Wells Fargo Bank;

    g. On or about October 7, 2008, Defendant Fenti directed his mother to withdraw $26,000 in U.S. currency from MJS Consulting at Wells Fargo Bank;

    h. On or about October 8, 2008, Defendant Fenti delivered approximately $16,000 in U.S. currency to S. C.;

    i. On or about November 13, 2008, Defendant Webster directed Farmers State Bank in Kansas to wire $90,000 to MJS Consulting at Wells Fargo Bank;

    j. On or about March 2, 2009, Defendant Hoffman transmitted a past performance questionnaire for Solicitation No. W81K00-09-R-0007 to an Army contracting official;

k.   On or about May 19, 2009, Defendant Hoffman deposited a $60,000 check drawn on the MJS Consulting account; and

l.   On or about June 5, 2009, Defendant Hoffman transferred $12,500 from Hoffman Surgical Devices, Inc. to a swimming pool contractor.

A violation of Title 18, United States Code, Section 371.

COUNT TWO
[18 U.S.C. § 201(b)(1)]

Beginning in or about August 2007, and continuing until in or about 2009, in the Western District of Texas, Defendants,

HEIDI LYNN WEBSTER,
LAWRENCE PETER FENTI,

corruptly did offer, promise, and give to R. P., a public official employed by U.S. Army North, a thing of value, that is, a share of the money derived from subcontracts to provide training personnel to Army North's Civil Support Training Activity,

a.   with intent to influence an official act, that is, the public official's decisions and actions in recommending a subcontractor to provide training personnel for Army North's Civil Support Training Activity;

b.   with intent to influence the public official to make an opportunity for fraud and to commit, collude in, and allow the commission of fraud on the United States; and

c.   with intent to induce the public official to do and omit to do acts in violation of his lawful duty.

A violation of Title 18, United States Code, Section 201(b)(1).

## COUNTS THREE THROUGH SIX
### [18 U.S.C. § 287]

On or about the dates stated below, in the Western District of Texas, Defendants,

**HEIDI LYNN WEBSTER,**
**LAWRENCE PETER FENTI,**

did make and present to the United States and the Army claims by MRI Resources Inc upon and against the United States and the Army, knowing such claims to be false, fictitious, and fraudulent:

| COUNT | Date | Invoice amount | Amount of false claim |
|-------|------|----------------|------------------------|
| THREE | 02/10/08 | $ 3,774.71 | $ 680 |
| FOUR | 02/21/08 | $ 6,816.54 | $ 612 |
| FIVE | 03/18/08 | $ 18,130.02 | $ 1,768 |
| SIX | 04/30/08 | $ 18,726.59 | $ 816 |

All in violation of Title 18, United States Code, Section 287.

## COUNT SEVEN THROUGH NINE
### [18 U.S.C. §§ 208(a) and 216(a)(2)]

Beginning in or about July 2007, and continuing until in or about 2009, in the Western District of Texas, Defendant,

**LAWRENCE PETER FENTI,**

being an employee of the executive branch of the United States Government, willfully and knowingly did participate personally and substantially as a government employee through recommendation, rendering of advice, and otherwise in the formulation and carrying out of each of the following U.S. Army contracts in which the Defendant had a financial interest:

| COUNT SEVEN | Contract No. W81K00-08-P-0582 |
| COUNT EIGHT | Contract No. W81K00-08-P-0611 |
| COUNT NINE | Contract No. W81K00-08-P-1044. |

And Defendant,

HEIDI LYNN WEBSTER,

willfully did aid, abet, counsel, and induce the aforesaid violations of Title 18, United States Code, Sections 208(a) and 216(a)(2).

All in violation of Title 18, United States Code, Sections 208(a), 216(a)(2), and 2.

## COUNTS TEN THROUGH TWELVE
[18 U.S.C. § 201(b)(2)]

Beginning in or about July 2007, and continuing until in or about 2010, in the Western District of Texas, Defendant,

LAWRENCE PETER FENTI,

being a public official of the United States, corruptly did seek, agree to receive and accept, receive, and accept a thing of value, that is, a share of the money derived from each of the following Army contracts:

| COUNT TEN | Contract No. W81K00-08-P-0582 |
| COUNT ELEVEN | Contract No. W81K00-08-P-0611 |
| COUNT TWELVE | Contract No. W81K00-08-P-1044 |

in return for:

a. being influenced in the performance of an official act, that is, decisions and actions in the creation, award, and carrying out of each of the contracts;

b. being influenced to make an opportunity for fraud and to commit, collude in, and allow the commission of fraud on the United States; and

c.   being induced to do and omit to do acts in violation of his lawful duty.

All in violation of Title 18, United States Code, Section 201(b)(2).

COUNTS 13 THROUGH 15
[18 U.S.C. § 201(b)(1)]

Beginning in or about July 2007, and continuing until in or about 2010, in the Western District of Texas, Defendant,

HEIDI LYNN WEBSTER,

corruptly did offer, promise, and give to U.S Army Sergeant Lawrence Peter Fenti, a public official, a thing of value, that is, a share of the money derived from each of the following Army contracts:

COUNT 13    Contract No. W81K00-08-P-0582

COUNT 14    Contract No. W81K00-08-P-0611

COUNT 15    Contract No. W81K00-08-P-1044

a.   with intent to influence an official act, that is, decisions and actions in the creation, award, and carrying out of each of the contracts;

b.   with intent to influence the public official to make an opportunity for fraud and to commit, collude in, and allow the commission of fraud on the United States; and

c.   with intent to induce the public official to do and omit to do an act in violation of his lawful duty.

All in violation of Title 18, United States Code, Section 201(b)(1).

COUNT 16
[18 U.S.C. § 1001(a)(3)]

On or about April 7, 2008, in the Western District of Texas, Defendants,

HEIDI LYNN WEBSTER,
LAWRENCE PETER FENTI,

in a matter within the jurisdiction of the executive branch of the United States government, that is, a memorandum to Army contracting officials regarding procurement of one magnetic resonance imaging (MRI) device and a building for Brooke Army Medical Center, knowingly and willfully did make and use a false writing, knowing same to contain the following materially false and fraudulent statements:

a.   I contacted the vendors and eliminated those that did not carry the Siemens product line, provide employees or work with modular buildings, or were unable to meet our timeline.   The only company that could do it all was Data Dynamics;

In truth, as the Defendants then well knew, Data Dynamics did not then carry the Siemens MRI product line, did not then provide employees, and did not then work with modular buildings;

b.   I used a price comparison to support my contractual decision.   We are currently leasing a Siemens 1.5T MRI from another 8(a).   DDI price was the same as quotes I received over two years ago from the other 8(a).   DDI also offers free training where others often charge up to $2,000 a day;

In truth, as the Defendants then well knew, DDI had not provided a price for an MRI device and DDI did not then offer free training.

A violation of Title 18, United States Code, Section 1001(a)(3).

COUNT 17
[18 U.S.C. § 1001(a)(3)]

On or about May 30, 2008, in the Western District of Texas, Defendants,

HEIDI LYNN WEBSTER,
LAWRENCE PETER FENTI,

in a matter within the jurisdiction of the executive branch of the United States government, that is, a memorandum to Army contracting officials regarding procurement of three magnetic resonance imaging (MRI) devices, a building, and personnel for Brooke Army Medical Center, knowingly and willfully did make and use a false writing, knowing same to contain the following materially false and fraudulent statements:

a. I contacted the vendors and eliminated those that did not carry the Siemens product line, provide employees or work with modular buildings, or were unable to meet our timeline. The only company that could do it all was Data Dynamics;

In truth, as the Defendants then well knew, Data Dynamics did not then carry Siemens MRI devices, did not then provide employees, and did not then work with modular buildings;

b. I used a price comparison to support my contractual decision. We are currently leasing a Siemens 1.5T MRI from another 8(a). DDI price was the same as quotes I received over two years ago from the other 8(a). DDI also offers free training where others often charge up to $2,000 a day;

In truth, as the Defendants then well knew, DDI had not provided a price for an MRI device and DDI did not then offer free training.

A violation of Title 18, United States Code, Sections 1001(a)(3).

## COUNT 18
[18 U.S.C. § 1001(a)(3)]

On or about June 20, 2008, in the Western District of Texas, Defendants,

HEIDI LYNN WEBSTER,
LAWRENCE PETER FENTI,

in a matter within the jurisdiction of the executive branch of the United States

Government, that is, an Army solicitation for proposals to provide one magnetic resonance imaging (MRI) device and a building for Brooke Army Medical Center, knowingly and willfully did make and use a false document, that is, a Past Performance Questionnaire of PVS signed Lynn Werner to Army contracting officials on behalf of Data Dynamics Incorporated, knowing same to contain the following materially false and fraudulent responses:

a. How long has your company had a contract with this contractor?   1 year;

b. Type of service being provided?   MRI service & support;

c. Where is the location of this service?   Multiple locations Tx and Ks;

d. What is the contract amount?   $1.5 million   $3.6 million;

e. Quality of Service - compliance with the contract statement of work requirement?   (See following page for rating system.)   Superior.

f. Business/Customer Relations - Effective management; successfully managed services; reasonable/cooperative behavior; flexible; business-like concern for customer's interest.   Superior.

In truth, as the Defendants then well knew, the responses were false in that:

a. PVS did not have a contract with Data Dynamics;

b. Data Dynamics was not providing MRI service and support to PVS;

c. Data Dynamics did not provide MRI service at multiple locations in Texas and Kansas;

d. PVS did not have contracts of $1.5 million and $3.6 million with Data Dynamics;

e. Data Dynamics had not provided a superior quality of service to PVS and had no

22

contract statement of work with which to comply; and

f. Data Dynamics had not provided MRI Resources Inc superior performance in business/customer relations - effective management; successfully managed services, reasonable/cooperative behavior; flexible; business-like concern for customer's interest.

A violation of Title 18, United States Code, Section 1001(a)(3).

COUNT 19
[18 U.S.C. § 1001(a)(3)]

On or about June 20, 2008, in the Western District of Texas, Defendants,

HEIDI LYNN WEBSTER,
LAWRENCE PETER FENTI,

in a matter within the jurisdiction of the executive branch of the United States Government, that is, an Army solicitation for proposals to provide a magnetic resonance imaging (MRI) device and a building to Brooke Army Medical Center, knowingly and willfully did make and use a false document, that is, a Past Performance Questionnaire of MRI Resources Inc to Army contracting officials on behalf of Data Dynamics, knowing same to contain the following materially false and fraudulent responses:

a. How long has your company had a contract with this contractor? Through 2008;

b. Type of service being provided? MRI;

c. Where is the location of this service? Manhattan, Kansas;

d. What is the contract amount? $1.5 million;

e. Quality of Service - compliance with the contract statement of work requirement (See following page for rating system.) Superior; and

f. Business/Customer Relations - Effective management; successfully managed

23

services; reasonable/cooperative behavior; flexible; business-like concern for customer's interest.   Superior.

In truth, as the Defendants then well knew, the responses were false in that:

a.   MRI Resources Inc did not have a contract with Data Dynamics;

b.   Data Dynamics was not providing MRI service to MRI Resources Inc;

c.   Data Dynamics did not provide MRI service located at Manhattan, Kansas;

d.   MRI Resources Inc did not have a $1.5 million contract with Data Dynamics;

e.   Data Dynamics had not provided a superior quality of service to PVS and had no contract statement of work with which to comply; and

f.   Data Dynamics had not provided MRI Resources Inc superior performance in business/customer relations - effective management; successfully managed services, reasonable/cooperative behavior;   flexibile;   business-like concern for customer's interest.

A violation of Title 18, United States Code, Section 1001(a)(3).

## COUNT 20
[18 U.S.C. § 1001(a)(3)]

On or about July 4, 2008, in the Western District of Texas, Defendants,

HEIDI LYNN WEBSTER,
LAWRENCE PETER FENTI,

in a matter within the jurisdiction of the executive branch of the United States Government, that is, an Army solicitation for proposals to provide three magnetic resonance imaging (MRI) devices, a building, and personnel to Brooke Army Medical Center, knowingly and willfully did make and use a false document, that is, a Past Performance Questionnaire in the name of PVS to Army contracting officials on behalf of

Data Dynamics, knowing same to contain the following materially false and fraudulent responses:

a.  How long has your company had a contract with this Contractor?   1 year;

b.  Type of product being provided?   MRI Service and Support;

c.  Where is the location of this product's use?   Multiple locations Tx & Ks;

d.  What is the contract amount?   $1.5 m and $3.6 m;

e.  Quality of Service - compliance with contract requirements?   (See following page for rating system)   (1) Superior; and

f.  Business/Customer Relations - Effective management; successfully managed services; reasonable/cooperative behavior; flexible; business-like concern for customer's interest.   (1) Superior.

In truth, as the Defendants then well knew, the responses were false in that:

a.  MRI Resources Inc did not have a contract with Data Dynamics;

b.  Data Dynamics was not providing MRI service and support to PVS;

c.  Data Dynamics did not provide MRI service at multiple locations in Texas and Kansas;

d.  PVS did not have contracts of $1.5 million and $3.6 million with Data Dynamics;

e.  Data Dynamics had not provided superior quality of service to PVS and had no contract statement of work with which to comply; and

f.  Data Dynamics had not provided MRI Resources Inc superior service in the following ways:   effective management; successfully managed services; reasonable/cooperative behavior; flexible; business-like concern for customer's interest.

A violation of Title 18, United States Code, Section 1001(a)(3).

## COUNT 21
### [18 U.S.C. §§ 201(b)(1)]

Beginning in or about April 2008 and continuing until in or about June 2009, in the Western District of Texas, Defendants,

**HEIDI LYNN WEBSTER,**
**LAWRENCE PETER FENTI,**

corruptly did offer and promise to S. C., a public official employed by the U.S. Army at the Brooke Army Medical Center radiology department, a thing of value, that is, $1,000 for each additional personnel added to contract W81K00-08-P-1044 related to staffing, with intent:

a.   to influence an official act, that is, the decision and action to cause modification of the contract to include additional personnel;

b.   to influence the public official to make an opportunity for fraud and to commit, collude in, and allow the commission of fraud on the United States; and

c.   to induce the public official to do and omit to do acts in violation of her lawful duty.

A violation of Title 18, United States Code, Section 201(b)(1).

## COUNT 22
### [18 U.S.C. §§ 201(b)(1)]

Beginning in or about April 2008 and continuing until in or about June 2009, in the Western District of Texas, Defendants,

**HEIDI LYNN WEBSTER,**
**LAWRENCE PETER FENTI,**

corruptly did offer, promise, and give to S. C., a public official employed by the U.S. Army

at the Brooke Army Medical Center radiology department, a thing of value, that is, approximately $16,000, with intent:

    a.  to influence an official act, the decision and action whether to authorize payment and to determine the amount of payment authorized on contract W81K00-08-P-0582 relating to one magnetic resonance imaging (MRI) system and a building;

    b.  to influence the public official to make an opportunity for fraud and to commit, collude in, and allow the commission of fraud on the United States; and

    c.  to induce the public official to do and omit to do acts in violation of her lawful duty.

A violation of Title 18, United States Code, Section 201(b)(1).

## COUNTS 23 THROUGH 29
[18 U.S.C. § 1343]

1.  The Grand Jury re-alleges and incorporates the scheme and artifice to defraud alleged in Count One into Counts 23 through 29, as if fully set forth herein.

2.  On or about each of the dates set forth below in the Western District of Texas, the designated Defendants, having devised and intending to devise the scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises described in paragraph one above, and for the purpose of executing the scheme and artifice, did transmit and cause to be transmitted in interstate commerce by means of wire communication, certain writings, signs, signals, pictures, and sounds:

| COUNT | Date | Defendant | Wire matter |
|---|---|---|---|
| 23 | 10/05/07 through 10/08/07 | HEIDI LYNN WEBSTER LAWRENCE PETER FENTI | Email: Webster to Fenti to R. P., Re: Civil Support Training Task Assignment: Are you the one that checks the number of hours the contractors work? If not who does? |
| 24 | 05/01/08 | HEIDI LYNN WEBSTER LAWRENCE PETER FENTI | $3,070.80 transfer from MRI Resources account Kansas to Fenti USAA account, San Antonio |
| 25 | 08/13/08 | HEIDI LYNN WEBSTER LAWRENCE PETER FENTI | Department of Defense Wide Area Work Flow authorization to pay $231,940 to Data Dynamics |
| 26 | 10/06/08 | HEIDI LYNN WEBSTER LAWRENCE PETER FENTI | $30,000 transfer from MRI Resources account Kansas to MJS Consulting Wells Fargo account |
| 27 | 12/09/08 | HEIDI LYNN WEBSTER LAWRENCE PETER FENTI | Department of Defense Wide Area Work Flow authorization to pay $393,069 to Data Dynamics |
| 28 | 03/02/09 | HEIDI LYNN WEBSTER LAWRENCE PETER FENTI JOHN WALTER HOFFMAN | Email: Hoffman to Army Medical Command BAMC, Re: MRI Resources Past Performance Letter |
| 29 | 05/26/09 | HEIDI LYNN WEBSTER LAWRENCE PETER FENTI JOHN WALTER HOFFMAN | Email: Hoffman to Army Center for Health Care Contracting, Re: Past Performance Data Sheet |

All in violation of Title 18, United States Code, Section 1343.

COUNT 30

[18 U.S.C. § 912]

1.   On or about May 27, 2011, in the Western District of Texas, R. P. did falsely

assume and pretend to be an officer and employee of the United States Army acting under

the authority of the United States Army, whose permanent station was to be transferred from Fort Sam Houston, Texas, to Medical Command Europe, Heidelberg, Germany, and in such pretended character, did demand and obtain from his landlord a thing of value, that is, a release from the obligations of an apartment lease by falsely claiming that he was a soldier in the Army entitled to termination of the lease under the Service Members Civil Relief Act in violation of Title 18, United States Code, Section 912.

 2. And Defendant,

LAWRENCE PETER FENTI,

did aid, abet, counsel, and induce the aforesaid violation of Title 18, United States Code, Section 912.

A violation of Title 18, United States Code, Sections 912 and 2.

### COUNT 31
[18 U.S.C. § 1001(a)(3)]

On or about March 2, 2009, in the Western District of Texas, Defendants,

HEIDI LYNN WEBSTER,
LAWRENCE PETER FENTI,
JOHN WALTER HOFFMAN,

in a matter within the jurisdiction of the executive branch of the United States Government, that is, the Army's selection of a contractor to perform off-site radiological interpretations as published in Solicitation No. W81K00-09-R-0007, knowingly and willfully did make and use a false writing, that is, a Past Performance Questionnaire of Defendant Hoffman and his company Hoffman Surgical Devices, Inc. on behalf of MRI Resources Inc, knowing the writing contained the following materially false and fraudulent responses:

 a. How long has your company had a contract with this contractor? 2 years;

29

b. Type of service being provided?   Teleradiology;

c. Where is the location of this service?   Redondo Beach, Ca;

d. What is the contract amount?   $525,000;

e. How many Full Time Equivalents (FTE) are on the contract?   2;

f. Have there been late deliveries or other unsatisfactory performance resulting in additional contractual or administrative costs?   No.   MRI Resources has done a fantastic job.   Their radiologists provide timely service and can be reached easily and immediately for consultation;

g. Quality of Service - Please rate overall compliance with contract statement of work requirement.   (1) Superior;

h. If other than "Satisfactory," explain how the overall performance exceeds or does not meet contractual requirements:

MRI Resources Inc is superior to services we have had in the past.   The radiologists are excellent.   They double check to make sure all the work is done and done right!   Their installation, customer service, and quality assurance set them apart from their peers;

i. Business/Customer Relations - Please rate overall effective management; successfully managed services; reasonable/cooperative behavior; flexibility; business-like concern for customer's interest.   (1) Superior;

j. If other than "Satisfactory," explain how the overall performance exceeds or does not meet contractual requirements:

I don't have to manage my contract.   It's a no headache operation.   Ownership is directly involved in the service and it shows in their operation.   MRI Resources Inc. is very responsive to our calls.   I can't imagine better service than we are getting.

In truth, as the Defendants then well knew:

a.  Hoffman Surgical Devices had no contract with MRI Resources Inc for two years or for any length;

b.  MRI Resources Inc did not provide teleradiology services to Hoffman Surgical Devices;

c.  MRI Resources Inc did not provide service to Hoffman Surgical Devices at Redondo Beach, California;

d.  Hoffman Surgical Devices did not have a $525,000 contract with MRI Resources Inc;

e.  There were no Full Time Equivalents;

f.  MRI Resources Inc had not performed a teleradiology job for Hoffman Surgical Devices;

g. and h.  MRI Resources Inc compliance with the contract statement of work requirement was not superior because there was no contract or statement of work and the Defendants' description of how MRI Resources' overall performance exceeded contractual requirements was without factual basis; and

i. and j.  MRI Resources Inc's business/customer relations with Hoffman Surgical Devices, Inc. was not superior and did not exist, and the Defendants' description of how MRI Resources overall performance exceeded contractual requirements was without factual basis.

A violation of Title 18, United States Code, Section 1001(a)(3).

<u>COUNT 32</u>
[18 U.S.C. § 1001(a)(3)]

On or about May 26, 2009, in the Western District of Texas, Defendants,

HEIDI LYNN WEBSTER,
LAWRENCE PETER FENTI,
JOHN WALTER HOFFMAN,

in a matter within the jurisdiction of the executive branch of the United States Government, that is, the Army's selection of a contractor to perform off-site radiological interpretations as published in Solicitation No. W81K04-09-T-0002, knowingly and willfully made and used a false writing, that is, a Past Performance Data Sheet of Defendant Hoffman and his company, Hoffman Surgical Devices, knowing the writing contained the following materially false and fraudulent responses:

a. Length of time your firm has been involved with this company: Since 2005;

b. Comments: (Required for ALL Poor, Good, or Outstanding Ratings) MRI Resources Inc. has done an outstanding job for us. They provide both radiology equipment and interpretation for our surgical centers and are key in our patient care services. We have worked with them on several Teleradiology projects. They have been reliable, are excellent communicators, and are a low maintenance contract for us. They do what they say they will do.

In truth, as the Defendants then well knew:

a. Hoffman Surgical Devices had not been involved with MRI Resources Inc since 2005; and

b. MRI Resources Inc had not provided teleradiology services, radiology equipment, or radiology interpretation to Hoffman Surgical Devices and had not worked with Hoffman Surgical Devices on several teleradiology projects.

A violation of Title 18, United States Code, Section 1001(a)(3).

## COUNT 33
[18 U.S.C. §§ 208(a) and 216(a)(2)]

1. Beginning on or about June 4, 2009, in the Western District of Texas, Defendant,

### LAWRENCE PETER FENTI,

being an employee of the executive branch of the United States Government, willfully and knowingly did participate personally and substantially as a Government employee through the rendering of advice, recommendation, and otherwise in the creation and carrying out of U.S. Army contract W91YTZ-09-P-1020 for the lease of magnetic resonance imaging equipment at Womack Army Medical Center in which the Defendant had a financial interest.

2. And Defendant,

### HEIDI LYNN WEBSTER,

did aid, abet, counsel, and induce the aforesaid violation of law.

All in violation of Title 18, United States Code, Sections 208(a), 216(a)(2), and 2.

## COUNT 34
[18 U.S.C. § 201(b)(2)]

Beginning in or about June 2009, and continuing until in or about 2010, in the Western District of Texas, Defendant,

### LAWRENCE PETER FENTI,

being a public official of the United States, corruptly did seek, agree to receive and accept, receive, and accept a thing of value, that is, a share of the money derived from the lease of a magnetic resonance imaging (MRI) device for Womack Army Medical Center, in return

for:

a. being influenced in the performance of an official act, a decision and action in recommending a contractor to provide a magnetic resonance imaging device to Womack Army Medical Center;

b. being influenced to make an opportunity for fraud and to commit, collude in, and allow the commission of fraud on the United States; and

c. being induced to do and omit to do acts in violation of his lawful duty.

A violation of Title 18, United States Code, Section 201(b)(2).

### COUNT 35
[18 U.S.C. § 201(b)(1)]

Beginning in or about July 2007, and continuing until in or about 2010, in the Western District of Texas, Defendant,

### HEIDI LYNN WEBSTER,

corruptly did offer, promise, and give to U.S Army Sergeant Lawrence Peter Fenti, a public official of the United States, a thing of value, that is, a share of the money derived from the lease of a magnetic resonance imaging device for Womack Army Medical Center,

a. with intent to influence an official act, a decision and action in recommending a contractor to provide a magnetic resonance imaging device to Womack Army Medical Center;

b. with intent to influence the public official to make an opportunity for fraud and to commit, collude in, and allow the commission of fraud on the United States; and

c. with intent to induce the public official to do and omit to do acts in violation of his lawful duty.

A violation of Title 18, United States Code, Section 201(b)(1).

## COUNTS 36 THROUGH 40
### [18 U.S.C. § 1956(a)(1)(B)(i)]

On or about each of the dates set forth below in the Western District of Texas, the designated Defendants, knowingly did conduct a financial transaction in and affecting interstate commerce and involving a financial institution engaged in interstate commerce which transaction involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Section 201 related to Bribery, and violation of Title 18, United States Code, Section 1343 related to Wire Fraud, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and the Defendants knew that the property involved in the transactions represented the proceeds of some form of unlawful activity:

| COUNT | DATE | DEFENDANTS | FINANCIAL TRANSACTION |
|---|---|---|---|
| 36 | 01/05/09 | LAWRENCE PETER FENTI JOHN WALTER HOFFMAN | $44,500 transfer from Wachovia Bank account to Hoffman Wells Fargo account |
| 37 | 05/07/09 | LAWRENCE PETER FENTI JOHN WALTER HOFFMAN | $39,000 transfer from Hoffman Wells Fargo account to Fenti USAA account |
| 38 | 05/11/09 | LAWRENCE PETER FENTI JOHN WALTER HOFFMAN | $21,552 transfer from J. Fenti USAA account to Gary Pools account |
| 39 | 05/16/09 | LAWRENCE PETER FENTI JOHN WALTER HOFFMAN | $60,000 transfer from MJS Consulting account to Hoffman Surgical Devices Wells Fargo account |
| 40 | 06/05/09 | LAWRENCE PETER FENTI JOHN WALTER HOFFMAN | $12,500 transfer from Hoffman Surgical Devices Wells Fargo account to Gary Pools account |

All violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## NOTICE OF UNITED STATES OF AMERICA'S
## DEMAND FOR FORFEITURE

### Forfeiture Statutes Relating to Conspiracy and Bribery
[Title 18 U.S.C. §§ 371, 201(b) subject to forfeiture pursuant to
Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by
Title 28 U.S.C. § 2461(c). *See* Fed. R. Crim. P. 32.2]

As a result of the foregoing criminal violations set forth in Counts One, Two, Ten-15, 21-22, and 34-35, which are punishable by imprisonment for more than one year, the United States gives notice that it intends to forfeit property from Defendants Heidi Lynn Webster and Lawrence Peter Fenti. Said Defendants shall forfeit any and all right, title, and interest in said property to the United States pursuant to Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture pursuant to Title 28 U.S.C. § 2461(c), which states the following:

Title 18 U.S.C. § 981.
**(a)(1)** The following property is subject to forfeiture to the United States:

* * *

**(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation. . . of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

This Notice of Demand for Forfeiture includes but is not limited to the property described in the paragraphs below.

### Forfeiture Statutes Relating to Wire Fraud
[Title 18 U.S.C. § 1343, subject to forfeiture pursuant to
Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by
Title 28 U.S.C. § 2461(c) and Title 18 U.S.C. § 982(a)(2). *See* Fed. R. Crim. P. 32.2]

As a result of the foregoing criminal violations set forth in Counts 23 through 29, which are punishable by imprisonment for more than one year, the United States

gives notice that it intends to forfeit property from Heidi Lynn Webster and Lawrence Peter Fenti. Said Defendants shall forfeit any and all right, title, and interest in said property to the United States pursuant to Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture pursuant to Title 28 U.S.C. § 2461(c), and Title 18 U.S.C. § 982(a)(2) which states the following:

> Title 18 U.S.C. § 982.
> (a)(2) The court, in imposing sentence on a person convicted of a violation of, or a conspiracy to violate--
> (A) section . . . 1343 . . . of this title,
>
>                      \*\*\*
>
> shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as a result of such violation.

This Notice of Demand for Forfeiture includes but is not limited to the property described in the paragraphs below.

Forfeiture Statutes Relating to Money Laundering
[Title 18 U.S.C. § 1956(a)(1)(B)(i) subject to forfeiture pursuant to Title 18 U.S.C. § 982(a)(1). *See* Fed. R. Crim. P. 32.2]

As a result of the foregoing criminal violations set forth in Counts 36 through 40, which are punishable by imprisonment for more than one year, the United States gives notice that it intends to forfeit property from Defendants Heidi Lynn Webster and Lawrence Peter Fenti. Said Defendants shall forfeit any and all right, title, and interest in said property to the United States pursuant to Title 18 U.S.C. § 982(a)(1), which states the following:

> Title 18 U.S.C. § 982.
> (a)(1) The court, in imposing sentence on a person convicted of an offense in violation of section 1956 . . . of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

This Notice of Demand for Forfeiture includes but is not limited to the property described in the paragraphs below.

## Money Judgments

A.     All right, title, and interest of Defendant Heidi Lynn Webster in the following described Money Judgment:

> **Money Judgment**:   A sum of money equal to Six Hundred Thirteen Thousand Eight Hundred Twenty Eight Dollars and no cents ($613,828.00) representing the amount of proceeds obtained, directly or indirectly, as a result of the violations set out in the above-described Counts and for which DEFENDANT HEIDI LYNN WEBSTER is liable.

B.     All right, title, and interest of Defendant Lawrence Peter Fenti in the following described Money Judgment:

> **Money Judgment**:   A sum of money equal to Five Hundred Forty Two Thousand Four Hundred Eighty Five Dollars and 35/100 cents ($542,485.35) representing the amount of proceeds obtained, directly or indirectly, as a result of the violations set out in the above-described Counts and for which DEFENDANT LAWRENCE PETER FENTI is liable.

## Substitute Assets

If any of the money judgments described above, as a result of any act or omission of the Defendants Heidi Lynn Webster and Lawrence Peter Fenti:

- a.    cannot be located upon the exercise of due diligence;
- b.    has been transferred or sold to, or deposited with, a third person;
- c.    has been placed beyond the jurisdiction of the Court;
- d.    has been substantially diminished in value; or
- e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States of America to seek forfeiture of any other property of Defendants Heidi Lynn Webster and Lawrence Peter Fenti up to the value of said

money judgments, as substitute assets pursuant to Title 18 U.S.C. § 982(b)(1) and Title 21 U.S.C. § 853(p); *(See* Fed. R. Crim. P. 32.2 ).

A True Bill.

_____
FOREPERSON OF THE GRAND JURY

ROBERT PITMAN
UNITED STATES ATTORNEY

BY: _____
JAMES BLANKINSHIP
(Assistant United States Attorney)